Marcia **TOMSON**, Plaintiff,

v.

Robert T. **STEPHAN** and Bob W. **Storey**, Defendants.

Civ. A. No. 85–4485–S.

United States District Court, D. Kansas.

Sept. 18, 1988.

Fred D. Thompson, Richard J. Braun, Thompson & Bussart, Nashville, Tenn., Don C. Krueger, Emporia, Kan., for plaintiff.

Carl A. Gallagher, David L. Plinsky, Asst. Attys. Gen., Topeka, Kan., for Robert T. Stephan.

Martha A. Peterson, Deanne Watts Hay, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kan., Patrick D. Gaston, Robert F. Bennett, Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, Kan., Gerald L. Michaud, Michaud & Hutton, Wichita, Kan., for Bob W. Storey.

## MEMORANDUM & ORDER

SAFFELS, District Judge.

This matter is before the court on defendants' motions for summary judgment.

This case arises out of the settlement of a sexual harassment case filed by plaintiff Marcia Tomson ("Tomson") in 1982 against defendant Kansas Attorney General Robert T. Stephan ("Stephan") and others. Tomson now claims that by discussing the terms of that settlement in a news conference in 1985, Stephan breached their settlement agreement and committed the tort of false light publicity. She also sues defendant Bob W. Storey ("Storey") for tortious interference with contractual rights and false light publicity, as a result of his role in planning and participating in that news conference.

The uncontroverted facts for purposes of this motion are as follows. In 1982, Tomson was employed as a clerk in the office of the Kansas Attorney General. At that time, Stephan was the Attorney General. She sued Stephan and others, claiming sexual harassment on the job. That case was settled, but the terms of the settlement were not revealed to the press or to the public. Nor were the terms set out in writing. Much speculation in the press ensued; questions were raised regarding how much money, if any, was paid, whether public funds were used, and why the terms were not disclosed. At this point, Stephan was considering a bid for the Kansas governor's race in 1986, and he and his advisors were concerned that the publicity might damage his campaign.

Stephan's first attempt at "damage control" was to meet with Tomson and her attorney, Margie Phelps, and to ask for Tomson's help with the bad publicity. In April, 1985, Tomson agreed to issue the following statement to the press:

I am making this statement because of all the unsupported speculation that's been in the press.

Bob Stephan is a good and decent person. The wrongs done to me were motivated by people no longer working for him.

Bob and Betty Nell Stephan are friends of mine, I fully support them; and I hope that Bob Stephan becomes governor.

This statement only generated more speculation in the press regarding the merits of the sexual harassment suit, and the Speaker of the Kansas House of Representatives proposed that the Legislature conduct an inquiry into the settlement. Stephan then began discussing with his political advisors whether they should disclose the terms of the settlement. Initially, defendant Storey opposed disclosure. However, it appears that at some point Storey agreed to assist Stephan in the disclosure.

On October 29, 1985, Stephan and Storey held a news conference. At that news conference, Storey outlined his role in raising private funds for the settlement. He stated that former Attorney General Vern Miller had arranged the settlement and had asked Storey to keep the terms of the settlement confidential. He announced that the case had been settled for $24,000. He also stated that "[t]he case was totally without merit, and preposterous allegations [were made]." Stephan stated that "the allegations in the suit were totally unfounded."

Tomson claims that one of the terms of the contract was that the parties agreed to keep the terms of the contract confidential. Therefore, she argues that Stephan breached their settlement contract, and that Storey tortiously interfered with the contract by taking part in the disclosure. She also claims that both defendants committed the tort of false light publicity by stating that her initial lawsuit was "without merit" and "totally unfounded."

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for

the non-moving party. *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986). The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). The language of Rule 56(a) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Defendants argue they are entitled to summary judgment as a matter of law on each of plaintiff's claims. The court will address each of the defendants' arguments accordingly.

### I. *False Light Publicity Claims*

Kansas has recognized the tort of false light publicity. *Rinsley v. Frydman*, 221 Kan. 297, 303, 559 P.2d 334, 339 (1977) (recognizing tentative draft of Restatement (Second) of Torts § 652E); *see also Rinsley v. Brandt*, 700 F.2d 1304, 1307 n. 3 (1983) (recognizing that Kansas Supreme Court would accept the final draft of the Restatement (Second) of Torts § 652E, adopted in 1977). As stated in § 652E of the Restatement:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E (1977). The tort of false light publicity differs from the tort of defamation in that a false light publicity claim seeks redress for mental distress as a result of being exposed to public view in a false light, while a defamation claim seeks redress for injury to reputation. *Time, Inc. v. Hill,* 385 U.S. 374, 384 n. 9, 87 S.Ct. 534, 540–41 n. 9, 17 L.Ed.2d 456 (1967). Both actions require that the matter published be untrue. Restatement (Second) of Torts § 652E, comment a. Therefore, just as in a defamation case, a plaintiff has no claim if the matter stated is not an untrue fact but is instead only an expression of an opinion. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974) (expression of opinion not actionable in a defamation case); *Rinsley,* 700 F.2d at 1309 (expression of opinion not actionable in false light publicity case).

■ Defendants first argue that Tomson waived any right to privacy she may have had by issuing her own news release in April, 1985. Defendants allege that Tomson in fact acknowledged in that appearance that her suit was baseless. Therefore, any statements Stephan or Storey subsequently made only gave publicity to facts she had already acknowledged as true. Storey also contends that Stephan made other disparaging remarks about the merits of the case prior to the October 1985 news conference, that these remarks placed Tomson in a false light, and that Storey's subsequent comments at the October 1985 news conference only reiterated what had already been made public. Defendants cite *Rawlins v. Hutchinson Publishing Co.,* 218 Kan. 295, 543 P.2d 988 (1975), for the proposition that a plaintiff may lose her right to privacy through waiver. The court in *Rawlins* rules that public figures waive their right to privacy as to the manner in which they conduct themselves in office. Plaintiff in that case brought an action based upon the invasion of privacy claim of "publicity given to private life." *See* Restatement (Second) of Torts § 625D. In order to make out a claim under § 625D,

the plaintiff must establish that the matters publicized constituted "private facts." The court in *Rawlins* pointed out that once a person becomes a public official, the actions that person takes in office are no longer "private." Those actions constitute "public facts," not "private facts," and the official has no cause of action for publicity given to private life. *Rawlins,* 218 Kan. at 301, 543 P.2d at 993.

Quite a different situation is presented here. Tomson is not a public official,* and she is not suing for publicity given to private life. The court is not presented with an issue of whether "private facts" have become "public facts" and whether plaintiff has therefore waived a right to privacy. The court finds that *Rawlins* is inapplicable to the case at bar, and the waiver argument is unpersuasive.

■ Even if principles of waiver were to be extended to other types of invasion of privacy actions, including false light publicity claims, the uncontroverted facts do not establish such a waiver. Defendants' argument is based entirely on Tomson's statement at the April 1985 news conference. They argue that the statement constituted an admission that her suit was "without merit" and "totally unfounded." The court rejects this contention. Her statement was much more ambiguous than that. She only stated that Stephan was a "good and decent person," that the "wrongs" done to her were done by others, and that she "hope[d] that Bob Stephan [would become] governor." These statements could be interpreted several different ways. Although many members of the press interpreted them as meaning that Tomson admitted her suit was baseless, the law requires that a jury, not the press, interpret those statements. Summary judgment would therefore be inappropriate on this point.

■ Similarly, the court rejects Storey's argument that Stephan's statements concerning Tomson's case prior to the news conference had already placed her in a false light. Storey claims that as a result

---

* Nor is she a public figure, *see infra* p. 1413.

of those statements, any statements he made at the press conference could not have done any additional damage. Storey provides the court with no authority which would establish that one false statement about a plaintiff destroys her right to sue any other person who subsequently comes forward and makes a similar statement. In fact, the court rejects such a notion and finds that any person who has been the victim of false light publicity should be allowed to recover from any party who contributed to the false publicity.

■ Defendant Stephan next contends that summary judgment is appropriate on Tomson's false light claim because by her own actions she was already before the public eye. He contends that the tort of false light publicity exists in order to protect those who have been "unwillingly" forced into the public eye. He points out that since Tomson was already in the public eye before the October 1985 news conference, Stephan's news conference did not place her in a position before the public where she otherwise would not have been. This argument is specious. It is not the publicity alone which makes such actions tortious; instead, it is the false light in which those actions place the plaintiff. The court rejects this argument.

■ Defendants next contend that summary judgment is appropriate because their statements at the October 1985 news conference were purely statements of opinion. They allege they were only stating their opinions on the merits of plaintiff's sexual harassment case. A statement is not actionable if the matter stated is not an untrue fact but instead is only an expression of opinion. *Rinsley*, 700 F.2d at 1309. Whether a particular statement is an assertion of fact or merely an expression of opinion is a question of law. *Id.*

While other statements of Stephan and Storey made at the press conference could definitely be characterized as expressions of opinion, the statements that Tomson's original action was "without merit" and "totally unfounded" must be interpreted as statements of fact. Neither Stephan nor Storey prefaced their statements with the phrase "in my opinion." They did not qualify their statements in any way. Instead of stating that they "believed" the suit to be "without merit" or "totally unfounded," they stated that they *were* baseless. Coming not from an objective third party analyzing the legal merits of the case, but instead from the party with actual knowledge of the facts of the case and from one of that party's closest advisors, the statements translate into this: "Bob Stephan did not sexually harass Marcia Tomson; he did not make sexual advances toward her, and he did not make offensive sexual comments *to her*." Regardless of whether this statement is true or false, it is certainly a statement of fact and not one of opinion. It will be for a jury to determine whether the statement is true. In the meantime, summary judgment is inappropriate.

In addition to his assertion that some of his statements at the press conference were expressions of opinion, defendant Storey also contends that other statements made at that press conference were true. Those statements are irrelevant to plaintiff's cause of action. Only the statements which could have placed Tomson in a false light are actionable. Other statements made regarding how the case was settled, what the terms of the settlement were, etc., may be true or false, but they could not place Tomson in a false light. In fact, they have nothing to do with Tomson or the merits of her claim. Storey's arguments are irrelevant to the court's decision on his summary judgment motion, but the court notes that Tomson will not be allowed to include those other statements as part of her false light publicity claim at trial.

■ Defendants also argue that plaintiff cannot satisfy subparagraph (a) of § 625E of the Second Restatement of Torts, because the false light into which she was allegedly placed as a result of their statements could not be "highly offensive to a reasonable person" as a matter of law. Stephan again points to Tomson's April 1985 statement to the press; he argues that no reasonable person could be offended by the false light allegedly created by Stephan's subsequent statements, since she

had already admitted her claim was baseless. Again, the court rejects this argument for the reasons stated earlier. Storey alleges that no reasonable person could be offended by the false light allegedly created by his statements because he merely described the terms and method of settlement. The court rejects this argument because it ignores Storey's statement that the suit was "totally unfounded." Of course, it is within the sole province of the jury to decide whether a reasonable person would be offended to learn that a person would file a baseless suit for sexual harassment against the state attorney general. For these reasons, summary judgment is inappropriate.

■ Finally, defendant Storey alleges that plaintiff has failed to establish her false light publicity claim because she has failed to show he acted with malice. The United States Supreme Court held in *Time, Inc. v. Hill* that the constitutional protections of speech and press announced in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), apply in false light publicity cases. *Time, Inc.,* 385 U.S. at 387–88, 87 S.Ct. 541–42. Therefore, false light publicity is not actionable if the statement in dispute concerned a public official or a public figure, unless malice is shown. *Id.* Malice is defined as knowledge of falsity or reckless disregard for the truth. *New York Times Co.,* 376 U.S. at 280, 84 S.Ct. at 726. The Court has refused to extend the *New York Times Co.* standard to private individuals in defamation cases, *Gertz v. Robert Welch, Inc.,* 418 U.S. at 345–46, 94 S.Ct. at 3009–10, and this court has found that the same rule should apply in false light publicity cases. *Rinsley v. Brandt,* 446 F.Supp. at 856.

Storey argues that Tomson is a limited public figure, and therefore she must show actual malice. A person becomes a limited public figure when she "voluntarily injects [herself] or is drawn into a particular public controversy" and "assume[s] special prominence in the resolution of public questions." *Gertz,* 418 U.S. at 351, 94 S.Ct. at 3012–13. The Court in *Gertz* pointed out

that the reason for the distinction between public and private figures is that public figures normally have greater access to the media in order to correct erroneous statements. *Id.* at 344, 94 S.Ct. at 3009. The Court also stated that more importantly, public figures have "assumed roles of especial prominence in the affairs of society" and have "invite[d] attention and comment." *Id.* at 345, 94 S.Ct. at 3009–10.

The court has no trouble concluding that Tomson is not a limited public figure. She did not "inject herself" into a public controversy. Instead, she simply filed a sexual harassment case against her employer, as do many women every day. Her case was a private civil lawsuit, not a "public controversy." Of course, her employer happened to be the Kansas Attorney General and a potential gubernatorial candidate; the case drew publicity because the defendant was a public official. But the court is not prepared to rule that any government employee who files a discrimination suit against her employer becomes a limited public figure. Even though this case gained special notoriety, this was due to Stephan's actions, not to Tomson's. In fact, the parties agree that she shunned the press during the pendency of her action and upon its settlement. She did appear at a news conference in April 1985, but this was done at the urging of the Attorney General himself and solely for the purpose of assisting him in his fight against the bad publicity his gubernatorial bid was receiving. The court does not agree that a private figure can become a public figure simply by appearing before the press at defendant's suggestion and for the purpose of benefitting the defendant. Therefore, Storey's argument is rejected.

Having found no good cause for granting summary judgment on the false light claims, defendants Stephan and Storey's motions for summary judgment on those claims will be denied.

## II. *Breach of Contract*

■ Stephan also seeks summary judgment on Tomson's breach of contract claim. This court has already rejected a previous

motion for summary judgment filed by Stephan on the breach of contract claim. *See Tomson v. Stephan,* No. 85–4485–S, slip op. (D.Kan., *unpublished,* March 9, 1988). In that Memorandum and Order, the court considered and rejected Stephan's statute of frauds argument. The court noted that since plaintiff amended her original complaint after Stephan filed his original motion for summary judgment, the court would permit him to file a supplemental motion for summary judgment concerning any legal theory other than the statute of frauds. *Id.* at 3. Despite this express limitation, Stephan again raises the statute of frauds issue in his renewed motion for summary judgment. To the extent this renewed motion does raise the statute of frauds issue, it is only a motion for reconsideration of the March 9, 1988 Memorandum and Order, and the motion is untimely. *See* Local Rule 206(f).

██ Even if the motion is not untimely, the court finds additional reasons why the statute of frauds argument should be rejected. Stephan argues that even if the settlement agreement provided that the parties would keep the terms of the settlement confidential, this term is not enforceable since it cannot be performed within one (1) year. K.S.A. 33–106 provides that agreements which are "not to be performed within the space of one year from the making thereof" must be in writing and signed by the party to be charged in order to be enforceable. Stephan contends that the parties could not perform this agreement within one year because of its perpetual nature: no time limits were placed on the nondisclosure provision.

Stephan's contention is in error. The parties allegedly agreed never to reveal the terms of their agreement. Essentially, they agreed to keep the terms of their agreement confidential for the rest of their lives. This is not an agreement which cannot be fully performed within the span of one year, because (as grim as it may sound) both Tomson and Stephan could have passed away within that first year. The contract would never have been fully performed without one full year's passage.

The contract is not within the statute of frauds, and Stephan's motion will be denied on the breach of contract claim.

██ Stephan also argues that summary judgment must be granted on the breach of contract claim to the extent plaintiff prays for punitive damages. He points out that punitive damages are not available on a breach of contract claim unless plaintiff also pleads an independent tort. Kansas law provides that punitives are not available to a party claiming breach of contract unless an independent tort indicates "malice, fraud, or wanton disregard of the rights of others." *Cornwell v. Jespersen,* 238 Kan. 110, 120, 708 P.2d 515, 523 (1985). "Wantonness is characterized by a realization of imminence of damage to others and restraint from doing what is necessary to prevent the damage due to indifference as to whether it occurs." *Id.*

Plaintiff has in fact pled an independent tort: she brings an independent tort action for false light publicity. She claims that Stephan disregarded her right to be free of false light publicity when he made certain statements in his press conference. This was the same press conference during which he allegedly breached their contract. The court has determined that at least some facts exist which might support her claim that he disregarded her right to be free of false light publicity; see *supra* p. 1413. Therefore, summary judgment would be inappropriate on the punitive damages issue.

III. *Tortious Interference with Contract*

██ Finally, defendant Storey seeks summary judgment on Tomson's claim that he tortiously interfered with her settlement agreement with Stephan. He first argues that the action is barred by the statute of limitations. This cause of action was first added by amended complaint on February 3, 1988. The statute of limitations on this cause of action is two years; *see* K.S.A. 60–513(a)(4). Therefore, the action is timely only if it relates back to the original complaint. Relation back of amended claims is governed by Rule 15(c) of the

Federal Rules of Civil Procedure, which provides that an amendment relates back to the time of the original pleading if it "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

Tomson's tortious interference claim is based upon Storey's alleged conduct in advising Stephan regarding a possible disclosure and upon Storey's statement at the eventual press conference. Tomson's original claim attempted to state a claim for conspiracy arising out of Storey's alleged role in advising Stephan regarding a possible disclosure. Tomson also attempted to state a claim in her original complaint for defamation arising out of Storey's statement at the press conference. The amended complaint plainly refers to the same conduct, transactions or occurrences set out in the original complaint: Storey's actions in advising Stephan before the press conference and his statement at that press conference. Therefore, the requirements of Rule 15(c) are met, and Storey's statute of limitations argument is rejected.

■ Storey next argues that Tomson has failed to show the existence of all essential elements of a cause of action for tortious interference with contract. Kansas generally follows the Second Restatement of Torts § 766, which provides that:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*See Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986).

Storey argues there is no evidence indicating he induced or caused Stephan to breach the settlement agreement; instead, he argues that the uncontroverted facts show Stephan decided for himself to make the disclosure without Storey's urging. Plaintiff responds that on several occasions, Storey discussed with Stephan the possibility of releasing information. Tomson also points to a statement Storey made at the October 1985 news conference, indicating that his reason for making his statement was to take away any reason Stephan might have for keeping the terms confidential. However, plaintiff ignores Storey's statements at that same news conference that Stephan "constantly urged full disclosure of the settlement" and that Stephan wanted "to get the details of the settlement out in the open." He also stated that Stephan "wanted those ... who [knew] the full story to tell it." Taken as a whole, Storey's statement at the press conference indicates the disclosure by both defendants was made at the insistence of Stephan himself. The court is aware of no other facts which would indicate Storey encouraged Stephan to make a disclosure or that Storey caused Stephan to make the decision he did. Therefore, the causation element has not been met, and summary judgment will be granted in defendant Storey's favor on the tortious interference claim.

IT IS BY THE COURT THEREFORE ORDERED that defendant Storey's motion for summary judgment is granted in part and denied in part. The motion is granted on plaintiff's tortious interference with contract claim (Count II). In all other respects, the motion is denied. IT IS FURTHER ORDERED that defendant Stephan's motion for summary judgment is denied.