No. 48,104

Donald B. Rinsley, M. D., *Appellant,* v. Louis Frydman, *Appellee.*

(559 P. 2d 334)

Opinion filed January 22, 1977.

*John E. Wilkinson,* of Colmery, McClure, Funk, Letourneau & Wilkinson, of Topeka, argued the cause, and was on the brief for the appellant.

*Jim Lawing,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal by Donald B. Rinsley (plaintiff-appellant) from the trial court's dismissal of an action for failure to state a claim pursuant to K. S. A. 60-212 (*b*) (6) of his amended petition, which seeks to allege defamation and invasion of privacy against Louis Frydman (defendant-appellee) who allegedly made false statements about the plaintiff.

The appellant raises three points on appeal. He contends (1) the case should have been considered under our summary judgment statute, K. S. A. 60-256; (2) he is not a high public official within the meaning of *New York Times Co. v. Sullivan,* 376 U. S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A. L. R. 2d 1412; and (3) criticism of his professional practices as Director of the Children's Section at Topeka State Hospital is actionable

Donald B. Rinsley, a psychiatrist, directs the children's section of the Topeka State Hospital. He is also a member of the Executive and Training Faculty in Child Psychiatry of the Menninger Foundation and an Associate Clinical Professor of Psychiatry at the University of Kansas Medical Center. Dr. Rinsley's amended petition,

filed May 9, 1975, further describes himself as "nationally recognized as an expert in the diagnosis and treatment of adolescent children." Louis Frydman is an Associate Professor of Social Welfare at the University of Kansas.

Dr. Rinsley's amended petition alleged that the defendant had (1) willfully and maliciously meddled in an attempt to disrupt the patient-physician and client-therapist relationships; (2) caused to be published or broadcast wholly erroneous and false remarks which have tended to damage plaintiff's good name and professional standing and reputation; and (3) interfered with plaintiff's right not to be subjected to mental suffering, shame or humiliation and with plaintiff's right to be free from unwarranted appropriation of one's personality to matters that are primarily private and that are subject to legitimate checks and limitations, [and to be free from publicity which places him before the public in a false light of a kind highly offensive to a reasonable man]. (The portion above in brackets is the only addition made by the amendment of the original petition.)

Dr. Rinsley prayed for an injunction to enjoin Dr. Frydman from unwarranted interference with his work and further breach of physician-patient contract and client-therapist relationship. He sought $200,000 actual damages and $200,000 punitive damages.

The original petition, not included in the record, was filed August 28, 1974. *The defendant's answer, filed September 4, 1974,* denied any legal wrongdoing. For affirmative defenses, the defendant relied upon the free speech provisions of the First Amendment to the United States Constitution and upon the public official doctrine of *New York Times Co. v. Sullivan,* supra.

On May 9, 1975, the plaintiff's amended petition was filed. There is no showing in the record that the appellant had leave of court or written consent by the adverse party to file this amended petition. (K. S. A. 60-215 [a].)

*On September 4, 1974, the defendant moved for an order dismissing the plaintiff's petition under K. S. A. 60-212 (b) (6), for failure to state a claim upon which relief can be granted. No motion for a more definite statement, pursuant to K. S. A. 60-212 (e),* was filed in the trial court by the appellee.

The motion to dismiss languished in the district court for some reason neither explained by counsel nor the record. The record is barren as to what transpired in the trial court until June 23, 1975, when answers to interrogatories were filed, and the trial court

announced its decision by filing its memorandum of decision on June 30, 1975, consisting of 28 pages in the record.

The journal entry counter-designated by the appellee is not in the record, and there is no indication whether it has been filed. In short, counsel for the respective parties have ignored the Rules of the Supreme Court. We shall therefore dispose of this case solely upon what does appear in the record, and upon admissions made by counsel in argument to this court at the hearing on appeal.

A lengthy deposition taken of Dr. Rinsley was certified on October 11, 1974, by a "Certified Shorthand Reporter." The deposition appears in the record set forth in full, but there is no indication that it was filed with the clerk of the district court or that it was ever submitted to the trial court.

In the deposition Dr. Rinsley's background was discussed and his alleged status as a public official was explored.

Dr. Rinsley alleged Dr. Frydman had contacted patients, relatives or guardians and recommended termination of treatment or removal of the patient from Topeka State Hospital without due and proper contact with the professionals involved in the case thereby violating the code of professional ethics. Two patients who left Topeka State Hospital were named although the surrounding facts are at best vague. Dr. Rinsley thought it would be tortious for an individual to advise removing a patient from Topeka State Hospital if "there is no evidence that the person making such a statement, . . . has taken proper action to secure information from the concerned professionals involved, . . . and is running around denigrating and disparaging the work of dedicated professionals."

Dr. Rinsley also introduced a report to the Joint Commission on Accreditation of Hospitals concerning Topeka State Hospital presented by Dr. Frydman to the Joint Commission survey team on June 3, 1974. In this report, which was not included in the record, Dr. Frydman allegedly denied that individual treatment exists in Topeka State Hospital. Dr. Frydman is alleged to have stated, "a truly individualized plan would be a myth regardless of what appears in the records."

Dr. Rinsley's deposition alleged Dr. Frydman's activities had rendered the administration of the children's section of Topeka State Hospital more difficult. Two lawsuits had been filed against Dr. Rinsley which he believed were an outgrowth of Dr. Frydman's activities. The need for Dr. Rinsley's patients to trust him was also discussed.

In the answers to interrogatories filed on June 23, 1975, Dr. Rinsley was asked to set forth all publicity which placed him before the public in a false light. He answered as follows:

"(a) Statement by Defendant Louis Frydman to the survey team of the Joint Commission of Accreditation of Hospitals, 1974.

"(b) Statements made by Defendant Louis Frydman to William Hickman, a former patient in the Adolescent Unit of the Children's Section, Topeka State Hospital, reported by the latter to me, to the effect that I had been mentally ill, hospitalized in a mental hospital for two years, and had had my license to practice medicine revoked, and that the patient had been treated while in the Adolescent Unit by persons as sick as the patient.

"(c) Similar statements to Michael Reedy, another former Adolescent Unit inpatient.

"(d) Similar statements to Cindy McDonald, another former Adolescent Unit inpatient.

"(e) There are undoubtedly a number of press releases, and radio and television releases which could be cited, but the five-part television program presented by WDAF-TV, Channel 4, Kansas City, Missouri late in August, 1973, entitled 'Captive Children,' in the inception and presentation of which Defendant Louis Frydman played an instrumental role, cast me and the work of the hospital clinical service, which I directed at that time in false light. Such false light included: wholly false statements concerning the operation, philosophy and service delivery of the Adolescent Unit; biased and slanted statements concerning the same; wholly false and inaccurate claims and statements alleging abuse and neglect of Adolescent Unit patients; wholly false, slanted and inaccurate claims and statements concerning the operation of the Adolescent Unit calculated to induce doubt and, indeed, horror in the public mind in general, and in the minds of the patients' parents and guardians, and of the patients themselves in specific."

The trial court in its decision on June 30, 1975, sustained the appellee's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to K. S. A. 60-212 (b) (6). It is clear from the trial court's memorandum opinion that neither the deposition nor the answers to the plaintiff's interrogatories were considered by the trial court in making its decision. The trial court comprehensively examined the law regarding defamation and concluded: (1) the facts do not constitute libel per se; (2) the plaintiff failed to allege or show special damages; (3) the statements of the defendant are conditionally privileged because of the plaintiff's position as a public official; (4) there were no factual allegations of either actual malice or recklessness which might destroy the defendant's use of privilege; and (5) the defendant's statements before legislative committees and commissions were made in an atmosphere of absolute privilege. The court then comprehensively examined the tort action known as invasion of privacy and con-

cluded that the plaintiff in his amended petition had not stated a claim upon which relief could be granted. The court concluded by saying:

"More importantly, the torts of defamation and invasion of privacy as applied to the instant facts, do not cover meddling. In all truthfulness, it appears that the plaintiff is sorely upset because the defendant has become an activist on behalf of mental patients, has made them more aware of some of their rights and has brought public attention to their problems through the legislature and the news media."

On July 9, 1975, the plaintiff filed what he labeled a motion to amend, and moved the court under K. S. A. 60-252 (b) to clarify its June 30, 1975, judgment to determine if the court considered the statements set out in the answers to interrogatories. On September 22, 1975, the court overruled the motion as being improper. Appeal has been duly perfected.

We turn to the appellant's first procedural point, that the trial court erred in not treating this case as a motion for summary judgment. K. S. A. 60-212 (b) states in part:

". . . If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, *matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in K. S. A. 60-256, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by K. S. A. 60-256." (Emphasis added.)

On the record here presented the appellant has utterly failed to show that the trial court should have treated the motion to dismiss as one for summary judgment. Accordingly, this point has no merit.

The appellee relies upon Schulze v. Coykendall, 218 Kan. 653, 545 P. 2d 392, for the proposition that a petition for libel and slander must set forth the alleged defamatory words spoken or published, the names of those persons to whom they were spoken or published and the time and place of their publication.

In the opinion of Schulze v. Coykendall, supra, the court recognized that with the advent of the rules of civil procedure on January 1, 1964, notice pleading was authorized. That is, a pleading need only contain "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which the pleader deems himself or herself entitled." (K. S. A. 60-208 [a]; and Malone v. University of Kansas Medical Center, 220 Kan. 371, 373, 552 P. 2d 885.) There is no requirement to state facts sufficient to constitute a cause of action.

(See 2A Moore's Federal Practice, para. 8.13 [2d Ed. 1976].) All the rules require is a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. (*Conley v. Gibson,* 355 U. S. 41, 47, ·2 L. Ed. 2d 80, 78 S. Ct. 99.)

A different rule is applied when one pleads special matters. K. S. A. 60-209 (*j*) provides in part:

"In an action for libel or slander, it shall not be necessary to state in the petition any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the claim arose, but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff; and if such allegation be not controverted in the answer, it shall not be necessary to prove it on the trial; in other cases it shall be necessary. . . ."

The court in *Schulze v. Coykendall,* supra, was careful to set out the provisions of K. S. A. 60-212 (*e*), which provides:

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleadings. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the judge is not obeyed within ten (10) days after notice of the order or within such time as the court may fix, the judge may strike the pleading to which the motion was directed or make such order as he deems just."

While the rule asserted by the appellee is correct, it requires a motion by the defendant under 60-212 (*e*), *supra,* to give it substance and compel compliance. This requirement was met in *Schulze v. Coykendall,* supra, where the court said:

"In the present case the motion for summary judgment had the effect of a motion for a more definite statement authorized by K. S. A. 1975 Supp. 60-212 (*e*) in that plaintiff was directed to furnish the necessary information within 15 days after the order on the renewed motion for summary judgment. An examination of both the plaintiff's deposition and the memorandum indicates that plaintiff failed or refused to disclose this necessary information. . . ." (p. 658.)

On this point see 5 Wright and Miller, Federal Practice and Procedure, § 1309, p. 440 [1969].

On the record here the appellee did not file a motion pursuant to 60-212 (*e*), *supra,* directed at the petition or "amended petition," and there is no substitute for it in the record.

Counsel for the appellant at the hearing before this court admitted, by categorically stating, the appellant was not proceeding against the appellee on a theory of defamation, either libel or

slander. The theory, then, upon which the appellant seems to be proceeding can best be stated by quoting from his brief, where it is stated:

"The activities of Defendant complained of in Plaintiff's Amended Petition and described more fully in Plaintiff's answers to Defendant's Interrogatories can be conceptualized as ranging on a continuum from tortious interference with confidential contractual relations, through the intrusion, appropriation, and false light forms of invasion of privacy. . . ."

Counsel for the appellant concedes he has found no authorities which support a theory of "tortious intermeddling," and we see no point in pursuing an academic discussion concerning a tort of "intermeddling" on the present posture of this case. (See Prossor on Torts, § 4, p. 21 [4th Ed. 1971].)

Our court has recognized invasion of the right of privacy as a tort upon which a cause of action may be based in *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993, and authorities cited therein. There the court adopted the Restatement of the Law Second, Torts, Tentative Draft No. 13, § 652. The authorities there cited disclose the invasion of the right of privacy comprises four distinct kinds of tort: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life; and (4) publicity placing person in false light.

The Restatement of the Law Second, Torts, Tentative Draft No. 13, § 652E, PUBLICITY PLACING PERSON IN FALSE LIGHT, reads:

"One who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." (p. 120.)

On the posture of the amended petition as set forth in the record, subject only to the rules of notice pleading at this point, it is sufficient to withstand attack, under the appellee's motion to dismiss, based on the theory of an invasion of privacy. It follows the action of the district court sustaining the motion was premature.

The entire costs of the record on appeal in the sum of $410.38 are assessed against the appellant for failure to comply with the Rules of the Supreme Court on appellate practice.

The judgment of the lower court is reversed.