Chin Thi LE and Anh "Tony" Dang, Plaintiffs,

v.

**HY–VEE, INC., Defendant.**

**No. CIV.A.04–2037–CM.**

United States District Court, D. Kansas.

May 18, 2005.

Barry R. Grissom, Michael M. Shultz, Overland Park, KS, for Plaintiffs.

Jeannie M. Deveney, Spencer Fane Britt & Browne, Overland Park, KS, Katherine A. Hansen, Lewis M. Galloway, Spencer Fane Britt & Browne, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiffs Chin Thi Le and Anh "Tony" Dang are Asian Americans, who came to the United States from Viet Nam. Plaintiff Le owns a nail salon called "Nails Now" (the "Nail Salon") that is located in the same shopping center as defendant Hy–Vee, Inc. grocery store ("Hy–Vee"). Plaintiffs allege that they were denied services at the Hy–Vee store based upon their race in violation of 42 U.S.C. § 1981. Plaintiffs further contend that the defendant committed the tort of placing plaintiffs in a false light by accusing them of being thieves in front of employees and customers at the Hy–Vee and at the Nail Salon. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 51).

## I. Facts [1]

Hy–Vee owns and operates a grocery store located at 10118 West 119th Street in Overland Park, Kansas. During the time in question, Scott Fuller was the Assistant Store Director of the Hy–Vee, and Linda Meister was a lower level Assistant Manager. The Nail Salon is located in the same shopping center at 10128 West 119th Street in Overland Park, Kansas. Plaintiff Le has operated the Nail Salon at this location since 1997, and plaintiff Dang has worked at the Nail Salon as a nail techni-

---

1. The court construes the facts in the light most favorable to plaintiffs as the non-moving party pursuant to Fed.R.Civ.P. 56.

cian since the salon opened. Plaintiffs shopped in the Hy–Vee store almost daily between the time the Nail Salon opened in 1997 and January 3, 2003.

The Hy–Vee procedures for handling shoplifters provide that employees are to advise the person, if necessary, that if they return to the store, they will be charged with criminal trespass. The procedures also provide for the collection of a civil recovery demand as allowed under Kan. Stat. Ann. § 60–3331.

**Phuong Van Dang Incident**

Phuong Van Dang is plaintiff Le's ex-husband and plaintiff Dang's father. On April 30, 2002, Hy–Vee employees Steve Miller and Donna Rose observed Phuong Van Dang shoplifting a soda. They apprehended Phuong Van Dang but later released him without requesting a civil recovery demand. Either Miller or Rose then informed Fuller that Phuong Van Dang had attempted to shoplift a soda.[2] Fuller knew Dang was associated with the Nail Salon because Fuller had seen him going in and out of the Nail Salon and had seen him with others associated with the Nail Salon.

**Loan Thi Dao Incident**

Loan Thi Dao is a family friend of plaintiffs. Dao had visited the Nail Salon while staying with plaintiffs' family and helped clean the Nail Salon on one or two occasions. As of October 2004, Dao was living with plaintiffs and their family. By affidavit, Meister testified that, on a couple of occasions before November 21, 2002, she had informed Fuller that she had observed Dao shoplifting from the store.

On November 21, 2002, Dao entered the Hy–Vee store with her child. She placed her child in a shopping cart and picked up two tomatoes and a container of soup. Hy–Vee employees Linda Wheeler and Fritz Gottschalk indicated in a completed Shoplifting Apprehension Statement they had observed her "hide the product in her cart under her child and proceeded to walkup [sic] and down a couple of aisles" and then observed Dao proceed "out the front doors without paying." Dao and her child were escorted to a conference room at the rear of the store, where Dao admitted to pushing the shopping cart through the first set of two doors at the exit of the store and placing it with the other unused shopping carts but claimed her son ran out of the store with the items and that she was simply running after him.

Hy–Vee employee Truc Phan interpreted for Dao. Truc Phan informed Dao that she had been apprehended by Hy–Vee employees for attempting to shoplift and translated the allegations summarized in the Hy–Vee Shoplifting Apprehension Statement. Plaintiffs claim that Truc Phan misrepresented to Hy–Vee what Dao said. Dao told Truc Phan to tell Hy–Vee that Dao had not stolen anything, but Truc Phan stated to Dao that she could not translate Dao's comments or statements to Hy–Vee because Truc Phan could only translate from the people in Hy–Vee to Dao. Dao signed the Shoplifting Apprehension Statement. Plaintiff Le paid a civil recovery demand of $50.00 on Dao's behalf, and Dao and her child were released into plaintiff Le's custody. Either Gottschalk or Wheeler informed Fuller about the incident.

---

**2.** Plaintiffs deny this allegation because, plaintiffs argue, the statements of Rose and Miller constitute inadmissible hearsay to the extent that they are offered for the truth of the matter asserted. The court, however, concludes that this fact is offered to establish that

Fuller received the report of shoplifting, which is relevant to Fuller's decision-making process with respect to excluding individuals associated with the Nail Salon, the subject of which will be discussed later in this opinion.

### Shopping Carts Incident

Defendant contends that there have been occasions when Hy–Vee's shopping carts have been found in plaintiffs' Nail Salon. Plaintiffs deny this, referring to plaintiff Dang's deposition testimony, wherein he states that sometimes a customer might roll a cart to the Nail Salon after shopping at Hy–Vee and before going to their car. In any event, late in 2002, Fuller visited the Nail Salon and asked plaintiffs regarding the whereabouts of shopping carts belonging to Hy–Vee. Plaintiffs denied possession of any shopping carts. Fuller informed plaintiffs that if he found shopping carts belonging to Hy–Vee in the Nail Salon, he would call the police.

### Other Incidents

Fuller testified by affidavit that he had been informed of numerous occasions when employees, friends and family members of plaintiff Le's Nail Salon shoplifted or attempted to shoplift items from the store. For example, Meister informed Fuller that an individual she thought to be a relative of plaintiffs had stolen or attempted to steal prophylactics. Meister also informed Fuller that she had witnessed a teenager that she thought to be associated with the Nail Salon steal ice cream and milk from the store, but was unable to stop him in time.

Fuller testified that he became aware that employees of the Hy–Vee store were having to spend time watching those associated with the Nail Salon to ensure they were not stealing. As a result, Fuller decided that people associated with the Nail Salon should no longer be allowed in the store. Fuller informed the Nail Salon of this decision in late December or early January 2003. Fuller also informed those working under him of this decision.

### Thanh Ngoc Dang Incident

Thanh Ngoc "Johnny" Dang is the son of plaintiff Le and the brother of plaintiff Dang. As indicated on a Hy–Vee Shoplifting Apprehension Statement dated January 2, 2003, Hy–Vee employees Miller and Rose apprehended Johnny Dang and took him to a conference room near the rear of the store, indicating they had observed him attempting to shoplift batteries. Fuller testified that he was informed that Johnny Dang had attempted to shoplift the batteries. Fuller knew that Johnny Dang was associated with the Nail Salon because Fuller had seen him go in and out of the Nail Salon, and Fuller had seen him with others he knew to be associated with the Nail Salon.

After apprehending Johnny Dang, a Hy–Vee manager and a security person went to the Nail Salon to locate Johnny Dang's parents. Apparently, Johnny Dang's parents were not available. Jenna Dang, plaintiff Le's daughter and plaintiff Dang's sister, and Cynthia Tucker, an African American and a Nail Salon customer on whom Jenna Dang was working, accompanied Jenna Dang to Hy Vee. Tucker claims that an unidentified Hy–Vee employee used profanity and "was very rude." Tucker asserts that the employee "said something [to Jenna Dang] about this is the last time that you're coming here." It is undisputed that the unidentified Hy–Vee employee told Jenna Dang that she was no longer allowed in the store, nor was anyone associated with her family or the Nail Salon. Tucker testified that she understood from the employee's words that she also was no longer permitted in the Hy–Vee because she was associated with the Nail Salon. Ultimately, Jenna Dang paid Hy–Vee $50.00, and her brother was released into her custody. Jenna later informed her mother, plaintiff Le, her father, Phuong Dang, and her brother, plaintiff Tony Dang, that she, her family members, and her friends were no longer allowed to shop at the Hy–Vee store.

**January 3, 2003 Incident**

Early in the evening on or about January 3, 2003, plaintiffs entered the subject Hy–Vee store at or near the same time. Plaintiff Dang went to the customer service counter to purchase stamps and soda. Plaintiff Le selected some fish, shrimp, and tomatoes and went to a check lane to purchase the items. As plaintiffs waited in line to purchase the items they had selected, Meister approached each of them, asked them not to shop at the store, and instructed them to leave. Meister then said to an unidentified male Hy–Vee employee "don't check her out." Meister then pointed at plaintiff Le and told her to "get out of [her] store." Plaintiff Le does not remember exactly what Meister said, but she believes Meister yelled "what the heck" or "what the fuck." According to plaintiff Le, Meister was "running around" and "yelling at the store really loud." Meister did not say plaintiff Le had stolen anything, "but she did say [plaintiff Le's] family is the one who was stealing stuff." Meister then told plaintiff Le she was not allowed back into the store again.

According to plaintiffs, Meister also pointed at plaintiff Dang and loudly told him "you need to get the hell out of here." Plaintiff Dang later testified that Meister instead told him to "get the fuck out of here or she [would] call the cops." When plaintiff Dang asked her not to use profanity, telling her to "watch your mouth, lady," Meister told him to "shut up."

Plaintiffs were asked to wait at the front of the store for the police to arrive. According to plaintiff Dang, while he waited at the front of the store with plaintiff Le, he heard Meister tell one of the employees at the register not to serve Asian people without her permission. According to plaintiff Le, while she waited at the front of the store with plaintiff Dang, Meister said that plaintiffs' family members are thieves, had been stealing stuff from the store for a long time, and "So, you know, Asian people is bad people."

Overland Park Police Department Officers Otero and Schuette responded to the scene at Hy–Vee's request. When they arrived, they were greeted by Gottschalk. Plaintiffs were at the front of the store when the police arrived. Their behavior was described by Officer Otero as "defensive and very irate." Officer Otero also noted that the plaintiffs "were being really loud."

The responding officers asked Gottschalk for a private area to meet with the plaintiffs, and he directed them to a conference room in the rear of the store. Once in the rear of the store, Officer Otero explained to the plaintiffs that they were no longer welcome in the store as customers because several of the employees and relatives from the Nail Salon had been caught stealing. The officer instructed them that, from then on, if they were found inside the premises, Hy–Vee would have the right to sign a complaint for criminal trespass and take them to court. The officer then escorted plaintiffs out of the store.

Plaintiff Dang alleges that, while they were at the back of the store with the police, Meister was "still talking loud and still just, you know, yelling and all, loud." He also testified: "I don't remember exactly, but I just have the impression that he say something about, you know, Asian is not a good people. They steal stuff. They steal things."

**Khoa Tran Incident**

Khoa Tran has known plaintiff Dang since 2001. Tran testified that plaintiff Dang's brother-in-law (plaintiff Le's son-in-law) is Tran's best friend. According to Tran, while he was visiting plaintiff Le sometime in late 2003, he stopped at the customer service counter of the Hy–Vee store and attempted to buy cigarettes.

Tran testified that a white female Hy–Vee employee refused to sell him cigarettes and told him "we don't sell to Asian people." According to Tran, when he asked her why, the employee turned and told two other white employees "don't—we don't want to serve an Asian people [sic]."

**Ngiah Nguyen Incident**

Ngiah Nguyen is Jenna Dang's boyfriend. According to Nguyen, while he was visiting Jenna at the Nail Salon, he stopped at the customer service counter of the subject Hy–Vee store and attempted to have a roll of film developed. A male Hy–Vee employee refused to develop the film for him, then "asked [him] to go, to move, to go out."

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. 42 U.S.C. § 1981 Claim

■ Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. 42 U.S.C. § 1981. It provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens...." *Id.* § 981(a). To establish a claim under § 1981, plaintiffs must show

that (1) they are members of a protected class; (2) defendant had an intent to discriminate on the basis of race; and (3) the discrimination interfered with a protected activity as defined in § 1981. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir.2001). Defendants contend that plaintiffs cannot establish the second element.

■ Defendants rely on the fact that Hy–Vee informed plaintiffs that anyone associated with the Nail Salon was excluded from the store. This prohibition did not include only Asian Americans, nor did anyone at Hy–Vee indicate it did. However, there is evidence in the record that Meister, a store management employee, made remarks that she would not, nor should any other Hy–Vee employee, provide services or sell goods to plaintiffs. Significantly, the record indicates that these statements included references to plaintiffs and other individuals associated with the Nail Salon as Asians. Such comments, at the very least, raise a question of fact as to whether plaintiffs have established a prima facie case. The court will assume, for purposes of this opinion, that plaintiffs have established a prima facie case.

Once plaintiffs present a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory justification for taking the disputed action. If the defendant provides a legitimate, non-discriminatory justification for the action, the burden shifts back to the plaintiffs to provide evidence showing that the defendant's proffered reason is a pretext for discrimination.

Defendant proffers that Fuller observed and/or received reports that numerous members of plaintiffs' family and friends and employees of plaintiffs had shoplifted or attempted to shoplift from the store. Accordingly, Fuller determined that plaintiffs and those associated with them were no longer permitted to shop at the store. In other words, defendant made a business decision to preclude—not all Asians—but all people associated with the Nail Salon, from entering the store. The court determines that defendant has proffered a legitimate, nondiscriminatory reason for excluding plaintiffs from the Hy–Vee store.

■ To avoid summary judgment after a legitimate, nondiscriminatory reason has been offered, a plaintiff must produce specific facts to show a genuine issue of fact as to pretext. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir. 1988). Mere assertions and conjecture are not enough to survive summary judgment. Rather, plaintiffs must also show that those reasons are a pretext "for discrimination." *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1321 (10th Cir.1992).

Plaintiffs simply have no evidence that Hy–Vee's decision to prohibit them from the store because of the plethora of shoplifting issues was a pretext for discrimination on the basis of plaintiffs' race. Plaintiffs are Asian, but there simply exists no evidence in the record to show that, because they are Asian, defendant prohibited them from entering the Hy–Vee store. Indeed, defendants point out that, as Tucker testified, she assumed the ban also included her—an African American.

Moreover, defendant has submitted affidavits stating that at least 150 Asian customers shop at the Hy–Vee each day. The Hy–Vee store also maintains a diverse workforce, with no fewer than eight Asian or Asian American employees, many of whom have worked at the Hy–Vee store for more than three years. An Asian employee of the bank located inside the Hy–Vee, as well as his family members, have always shopped at the Hy–Vee without incident. In fact, there is no evidence in the record that any Asian customer (other than individuals associated with the Nail

Salon) has ever had any difficulties at the Hy–Vee store. Perhaps one of the most telling facts here is that plaintiffs themselves shopped at the Hy–Vee store on a daily basis for over five years without experiencing any problems, and only began to have problems when the alleged shoplifting incidents began. Other than mere assertions and conjecture, plaintiffs have failed to convince this court that defendant's actions were a pretext for race discrimination—specifically discrimination against Asians or Asian Americans. In less than one year's time, Fuller received numerous reports of shoplifting incidents involving employees, family members, and friends of plaintiffs and their Nail Salon. No reasonable factfinder could conclude that defendant's reason for excluding plaintiffs from the Hy–Vee premises is unworthy of credence. The court grants summary judgment to defendant on this claim.

### B. False Light Claim

■ Plaintiffs also claims defendants are liable for false light/invasion of privacy. Plaintiffs contend that Hy–Vee placed plaintiffs in a false light by accusing their family members of theft on three occasions: (1) in the Nail Salon in September 2002, (2) in the Nail Salon in January 2003, and (3) in the Hy–Vee in January 2003.

In *Rinsley v. Frydman*, 221 Kan. 297, Syl. ¶ 1, 559 P.2d 334 (1977), the court stated that "[o]ne who gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man, is subject to liability to the other for invasion of his privacy." In *Ali v. Douglas Cable Communications*, 929 F.Supp. 1362, 1383 (D.Kan.1996), the court explained that publicity is different from the term publication within the purview of the elements of defamation in that publication "is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Truth and privilege are defenses available in both causes of action. *Castleberry v. Boeing Co.*, 880 F.Supp. 1435 (D.Kan.1995)

Plaintiffs allege that there were a total of six or seven third parties present during these alleged incidents including: four to five Nail Salon customers in September 2002 and two Nail Salon customers in January 2003. No third parties (or at least none identified by plaintiffs) were present at the Hy–Vee in January 2003. Alleged publication to such a small number of third parties is insufficient to survive summary judgment on plaintiffs' claim for false light. *Ali*, 929 F.Supp. at 1383 ("Thus it is not an invasion of the right of privacy... to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity ....") The plaintiffs are unable to bring forth evidence of such widespread disclosure of private matters as to constitute publicizing. Without such evidence, defendant is entitled to summary judgment on this claim as well.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 51) is granted.