NOT DESIGNATED FOR PUBLICATION

No. 113,248

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

TERRY LEE KAHN,
*Appellant*,

v.

DENISON STATE BANK, JASON PICKERELL,
SANDRA MUMAW, and GRIFFITH & BLAIR, INC.,
*Appellees*.

MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed February 19, 2016. Affirmed in part, reversed in part, and remanded.

*Paul D. Post*, of Topeka, for appellant.

*Erin Beckerman* and *R. Patrick Riordan*, of Riordan, Fincher, Munson & Sinclair, PA, of Topeka, for appellees Denison State Bank and Jason Pickerell.

*Gerald King*, *Casey O. Housley* and *Krystle M. Dunn*, of Armstrong Teasdale LLP, of Kansas City, Missouri, for appellees Sandra Mumaw and Griffith & Blair, Inc.

Before MCANANY, P.J., POWELL, J., and DAVID J. KING, District Judge, assigned.

*Per Curiam*:  Terry Lee Kahn appeals the district court's dismissal of her lawsuit for failure to state a claim, pursuant to K.S.A. 2015 Supp. 60-212(b)(6). Kahn's lawsuit arose out of her purchase of residential real estate from the Denison State Bank (the Bank). Named as defendants in the suit were the Bank and others involved in the transaction. Kahn asserted claims for fraud, fraud by silence, violation of the Kansas

1

Consumer Protection Act (KCPA), and violation of the Uniform Consumer Credit Code (UCCC). In lieu of filing responsive pleadings, the defendants filed motions to dismiss plaintiff's claims, which the district court granted. For the reasons described in this opinion, we conclude that the district court erred in granting dismissal of some of the claims against some of the defendants. Accordingly, we affirm in part, reverse in part, and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2012, Terry Lee Kahn purchased a house at 910 Catherine Street, Valley Falls, Kansas, from the Bank for $65,000. The documents involved in this transaction included a contract, a seller's disclosure statement, and a mortgage. The contract and disclosure statement were fill-in-the-blank forms produced by the Topeka Area Association of Realtors.

According to the terms of the contract, Kahn waived the right to conduct inspections of the property and agreed "to accept the property in its 'as is' condition without any inspections." In apparent contradiction to the seeming simplicity of the above statement, the contract went on to provide:

> "**PROPERTY CONDITION:** Buyer has carefully inspected the property, and, subject to any inspections included in this Contract, agrees to purchase the property in its present condition. No warranties or guarantees of any kind are made by Seller or any real estate licensee concerning the condition or value of the property, unless expressly set forth in this Contract or specifically implied by Kansas law. Buyer acknowledges that neither Seller nor any real estate licensee involved in this transaction is an expert at detecting or repairing physical defects in the property. Except for information provided in the Seller's Property Disclosure Statement, Buyer states that no important representations concerning the condition of the property are being relied upon by Buyer.

"Buyer acknowledges that defects or conditions concerning the property may exist of which the Seller may not be aware, but could be revealed as a result of an inspection by a qualified professional.

"Buyer acknowledges receipt and acceptance of Seller's Property Disclosure Statement dated _____.

"Buyer agrees to verify, by an independent investigation, information Buyer deems important. Buyer has been advised to have the property examined by professional inspectors. Buyer acknowledges that no important representations have been made by any real estate licensee, and further, that none have been made by Seller other than the information provided in the Seller's Property Disclosure Statement."

The four-page Seller's Property Disclosure Statement included 11 sections:

Appliances

Electrical System

Heating and Cooling Systems

Plumbing/Clean Water Systems

Roof/Exterior Walls/Insulation

Structural/Foundation/Walls

Water/Drainage/Sewage

Boundaries/Land/Restrictions/Covenants

Environmental Disclosures

Other Disclosures

Damage Disclosures

Under each of these section headings there was space for the seller to indicate the condition of multiple individual components. Rather than have this information filled in on the disclosure statement, all sections had a line across the page and contained no other information. On the last page of the disclosure statement, the seller was allowed to mark one of two optional statements before signing it. The first optional statement read:

"Seller certifies that the information herein is true and correct to the best of Seller's knowledge as of the date signed by Seller. Seller agrees to notify Buyer of any additional items that may become known to the Seller before closing. Seller further agrees to hold the Real Estate Broker(s) harmless from any liability incurred as a result of any third-party reliance on the disclosure contained herein and acknowledges receipt of a copy of this statement."

The seller chose not to select the first optional statement. Instead, the seller chose the second optional statement, which read:

"Seller (or Seller's representative) has not occupied or personally managed this property in the past _____ years and may not be familiar with all conditions represented in this form. Seller, therefore, may be unable to make representation as to all conditions."

The disclosure statement was signed on behalf of the seller by Jason Pickerell, Vice President of the Bank. Pickerell's signature is dated August 11, 2011, which is 10 months prior to the date of the contract between Kahn and the Bank.

Above Kahn's signature line on the disclosure statement is the following statement:

"Seller does not intend this Disclosure Statement to be a warranty or guarantee of any kind. Buyer agrees to purchase the property in its present condition only, without warranties or guarantees of any kind by Seller or any Broker(s) concerning the condition or value of the property. There are no representations concerning the condition or value of the property made by Seller or Broker(s) on which I am relying except as may be fully set forth in writing and signed by them."

Kahn signed the disclosure statement on June 7, 2012.

4

To finance her purchase of 910 Catherine, Kahn borrowed $67,000 and gave the bank a mortgage on not only 910 Catherine, but also her personal residence at 706 Linn Street in Valley Falls. Kahn obtained the deed to 910 Catherine on June 28, 2012.

Kahn filed the present case in June 2014. She named as defendants (1) Denison State Bank—the seller of the real estate, (2) Jason Pickerell—the Bank's vice president, who acted as the Bank's agent in the transaction and is alleged to have been a former owner of the property, (3) Sandra Mumaw—the Bank's real estate sales agent in the transaction, and (4) Griffith & Blair, Inc.—the real estate sales agent's employer. From time to time we may refer to the Bank and Pickerell as the "bank defendants" and Mumaw and Griffith & Blair, Inc., as the "realtor defendants."

Kahn asserted claims for fraud, fraud by silence, violation of the KCPA, and violation of the UCCC. In lieu of filing responsive pleadings, the defendants filed motions to dismiss plaintiff's claims for failure to state a claim upon which relief could be granted.

On January 6, 2015, after extensive briefing by the parties, the district court held a hearing on the motions to dismiss. After considering the arguments of the parties' attorneys, the court granted the motions to dismiss. It stated:

> "[The] Court finds that the contract specifies that the purchase is as is and defines the same to be the condition existing at the time. [The] Court finds that the buyer was afforded reasonable opportunity to inspect and actually provide subsequent inspections if deemed necessary. That—the Court finds that the purchaser/plaintiff bought the property as is, that no warranties or guarantees of any kind were made by the seller or any real estate agent license concerning the condition or the value of the property unless as specifically set forth in that contract. Buyer further states that no important representations concerning the condition of the property are being relied upon by buyer.

5

"Based upon the four corners of the real estate contract, the Court finds that defendant has established by a preponderance of the evidence and according to law that they are entitled to dismissal on all three counts . . . based upon the real estate contract pursuant to which the transaction was made."

The district court additionally adopted and incorporated "[t]he authorities and arguments" set forth in defendants' motions and briefs. From this, the court concluded that Kahn's "Second Amended Petition fails to state a claim for damages against any defendant, and defendants are entitled to dismissal of all counts in the Second Amended Petition."

THE DISMISSAL OF PLAINTIFF'S CLAIMS

Whether a district court erred by granting a motion to dismiss for failure to state a claim is a question of law subject to unlimited review. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013). "[W]hen a district court has granted a motion to dismiss for failure to state a claim, an appellate court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom." 296 Kan. at 546. If those facts and inferences state any claim under any possible theory, then the district court's dismissal must be reversed. 296 Kan. at 546. The district court may not resolve factual disputes on a motion to dismiss for failure to state a claim. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008). Judicial skepticism must be exercised when defendants move to dismiss before the completion of discovery. 287 Kan. at 232. Moreover, to the extent that the district court's dismissal involves interpretation of a statute, an appellate court has unlimited review over the district court's statutory construction. *Knop v. Gardner Edgerton U.S.D. No. 231*, 41 Kan. App. 2d 698, 709, 205 P.3d 755 (2009).

In considering whether the district court erred in granting the defendants' motions to dismiss, a careful review of the factual allegations of plaintiff's second amended petition is essential.

*The claims against the realtor defendants*

In Kahn's second amended petition she does not distinguish among the defendants in asserting her claims for relief. She merely asserts: "The Defendants committed deceptive acts and practices under K.S.A. 50-626," "[t]he Defendants committed unconscionable acts and practices under K.S.A. 50-627," and "[t]he conduct, acts, and omissions of the Defendants, through its officers and agents, constituted actual fraud or fraud by silence."

Other than this generic grouping of the defendants, the second amended petition's sole identification of how the realtor defendants participated in wrongdoing consists of the following allegations:

> "Sandra Mumaw is a real estate agent employed by defendant, Griffith & Blair, Inc., a Kansas corporation engaged in real estate transactions.
>
> . . . .
>
> "15. Sandra Mumaw ('Mumaw'), a real estate agent employed by Griffith & Blair, Inc. was the sales agent for the Bank in this transaction. Suit is brought against Mumaw and Griffith & Blair, Inc. for the reason that the Bank may claim that Mumaw knew about the defects, condition, and prior litigation involving the Property, but failed to disclose any or all of these to Plaintiff. Counsel for Plaintiff has made written demand upon Griffith & Blair, Inc. concerning Plaintiff's claims regarding the Property prior to filing of this lawsuit, and Mumaw and Griffith & Blair, Inc. are included as defendants, in part, due to the fact that the applicable statute of limitations will soon expire."

7

The allegations of Kahn's second amended petition against Mumaw and Griffith & Blair, Inc., are not legally sufficient under either the standard of particularity for pleading a claim of fraud or even the more permissive notice pleading standard.

Kahn asserts that rather than dismiss her claims against the realtor defendants, the district court should have allowed her to file a more definite statement. What Kahn fails to account for is that it was the realtor defendants, not Kahn, who asked the district court to order Kahn to make a more definite statement. They requested this as an alternative in the event the court did not grant their motion to dismiss. Nothing in the record on appeal indicates that Kahn moved to amend her petition in order to provide a more definite statement. Moreover, when the realtor defendants' attorney was arguing that the district court should dismiss Kahn's action under K.S.A. 2015 Supp. 60-212(b)(6), Kahn never argued that the district court should grant the realtor defendants' alternative motion for a more definite statement.

Generally, issues not raised before the district court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). Although there are exceptions to this rule, Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) (holding that Rule 6.02[a][5] will henceforth be strictly enforced). Given that Kahn does not even address that she is raising this issue for the first time on appeal, we conclude Kahn has abandoned it.

Additionally, Kahn argued to the district court that it should deny the realtor defendants' motion for a more definite statement under K.S.A. 2015 Supp. 60-212(e) because they had failed to comply with statutory requirements. Kahn continues to make

8

this same argument on appeal. Kahn cannot argue that the district court erred by not addressing or not granting the realtor defendants' motion for a more definite statement because Kahn requested the denial of this motion below. When a party has invited error, the error cannot be complained of on appeal. *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013).

The district court did not err in granting the realtor defendants' motion to dismiss for failure to state a claim.

*The claims against the bank defendants*

In her second amended petition, Kahn claims the Bank actively solicited her to purchase 910 Catherine. It represented that the property had been "'fully remodeled'" and "'fully refurbished,'" but didn't disclose that it was the bank's vice-president Pickerell who had done the remodeling and refurbishing. The Bank had owned the property for some time. Pickerell was previously the owner of the property and sold it to Kimberly Krogman in 2007. Krogman discovered a number of problems with the property and eventually sued the bank, alleging fraud, KCPA violations, and UCCC violations—essentially the same claims as Kahn asserts in this suit. The Bank ended up repurchasing the property from Krogman in settlement of her claims.

Kahn alleges the bank defendants came to know of a number of material problems with the property as a result of the sale to Krogman, the ensuing litigation, and the repurchase of the property. Notwithstanding this knowledge, the bank defendants represented to Kahn in the Seller's Property Disclosure Statement that they did not know of adverse conditions of the property because they had not "occupied or personally managed [the] property" and thus were not "familiar with all [the] conditions represented." By marking a line through all 11 sections in the disclosure statement, they omitted providing information about their knowledge of the following conditions:

9

"a. Whether the plumbing was working or not working;

"b. Whether the central air conditioning was working or not working;

"c. Whether there was insulation installed in the ceiling, walls, attic, or floors;

"d. Whether the Bank was aware of 'past and/or present moisture problems';

"e. Whether the Bank was aware of any water or dampness in the basement;

"f. Whether the Bank was aware of any past/present problems relating to the sewer;

"g. Whether the Bank had been involved in any litigation regarding the Property;

"h. Whether the Bank was aware of any other facts, conditions, and/or circumstances affecting the value, beneficial use, and/or desirability of the Property."

The failure to fill out this information in the disclosure statement constituted a misrepresentation of material fact because the Bank and Pickerell knew: (1) there had been water problems in the basement, (2) the sewer line had had drainage problems, (3) the air conditioner condensing unit had been leaking water into the property, (4) there was no insulation under the siding, (5) there was mold from the prior water problems, (6) the Bank had been involved in prior litigation involving the property, and (7) that litigation specifically involved material adverse conditions of the property.

Kahn claims, based on these facts, that the acts of the defendants "constituted actual fraud or fraud by silence."

Kahn claims that her purchase of 910 Catherine was subject to the KCPA, K.S.A. 50-623 *et seq.*, and that the bank defendants engaged in deceptive acts and practices under K.S.A. 2015 Supp. 50-626 by: (1) "the willful use of exaggeration, falsehood, innuendo or ambiguity as to the material facts surrounding this transaction," and (2) "the willful failure to state a material fact or the willful concealment, suppression, or omission of material facts surrounding the transaction."

Kahn claims the bank defendants committed unconscionable acts and practices under K.S.A. 50-627 in that: (1) the "Plaintiff was unable to receive a material benefit

10

from the transaction," (2) "[t]he transaction was primarily designed to benefit the Defendants at the expense of Plaintiff and with little or no realization of material benefit to the Plaintiff," (3) "[t]he transaction was exceptionally one-sided in favor of Defendants," (4) "[t]he price of the Property grossly exceeded the price at which similar property was readily obtainable in similar transactions by similar consumers," and (5) "[t]he Defendants made misleading statements of opinion upon which the Plaintiff was likely to rely to the Plaintiff's detriment."

Kahn claims that her purchase of the property was governed by the UCCC, K.S.A. 16a-1-101 *et seq.*, and she was entitled to relief thereunder because "[t]he transactions in question were induced by Defendants' unconscionable conduct, as described above."

Our analysis of whether the district court erred in granting the bank defendants' motion to dismiss is a two-step process. The first step is to decide whether Kahn's claims against the bank defendants fail because this was an "as is" contract. The second step is to decide whether Kahn's second amended petition otherwise stated sufficient facts to support claims for fraud, violations of the KCPA, and violations of the UCCC.

*The "as-is" term of the contract*

The principal reason the district court gave as to why the defendants were entitled to dismissal of Kahn's claims against them was because Kahn agreed to purchase the property in its "as-is" condition. Kansas does not prohibit sale of real estate on an "as-is" basis, but merely including such a term in the real estate contract does not relieve a party from making disclosure of material adverse conditions applicable to the property which the seller is aware of. Two recent Kansas Supreme Court cases are applicable.

In *Osterhaus v. Toth*, 291 Kan. 759, 786-87, 249 P.3d 888 (2011), our Supreme Court held that an "as-is" condition in an amendment to Osterhaus' contract did not

11

release the seller from liability for failing to disclose major structural defects. This is because when read in the context of the entire contract, it was clear that the "as is" provision only protected Toth as to the defects Osterhaus identified as being unacceptable following his inspection. 291 Kan. at 786-787.

In *Stechschulte v. Jennings*, 297 Kan. 2, 20, 298 P.3d 1083 (2013), our Supreme Court held that a buyer's signature on an acknowledgement form does not relieve the seller of the obligation to make truthful disclosures and does not waive the buyer's right to rely on those disclosures. Instead, a buyer's acknowledgment merely protects the seller from "a buyer's later allegation that the seller made representations not committed to writing upon which the buyer relied." 297 Kan. at 20.

Thus, even though Kahn signed an "as-is" contract, Pickerell made the affirmative representation that neither he nor the Bank had "occupied or personally managed [910 Catherine] in the past ___ years" and therefore "may not be familiar with all conditions represented in this form" and "may be unable to make representation as to all conditions." Viewed in the manner required when considering a motion to dismiss, the seller's representations in the disclosure statement leads one to reasonably conclude that Pickerell and the Bank are unaware of any materially adverse conditions of the property. The facts stated in Kahn's second amended petition make this representation false. Kahn alleges Pickerell was a prior owner of the property and that he and the Bank had knowledge of multiple material adverse conditions of the property. Under *Osterhaus* and *Stechschulte*, they had a duty to make truthful disclosures and Kahn had a right to rely on the disclosures. The inclusion of the term that this was an "as-is" contract did not insulate them from claims under the KCPA or UCCC or for a violation of common-law fraud.

12

*The factual sufficiency of plaintiff's claims*

In evaluating the factual sufficiency of the claims in Kahn's second amended petition we are mindful that Kansas generally allows notice-type pleading. Thus, in a pleading, all that is necessary is "[a] short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought." K.S.A. 2015 Supp. 60-208(a)(1)-(2). Plaintiffs do not have to state facts sufficient to constitute a cause of action. *Rinsley v. Frydman*, 221 Kan. 297, 301, 559 P.2d 334 (1977). "All the rules require is a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." 221 Kan. at 302.

An exception to the general rule of notice pleading exists for claims alleging fraud. A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." K.S.A. 2015 Supp. 60-209(b). Thus, a plaintiff alleging fraud must provide details as to each element of fraud. See *Newcastle Homes v. Thye*, 44 Kan. App. 2d 774, 788, 241 P.3d 988 (2010). "[T]he statutory requirement to plead fraud with particularity is strictly enforced." 44 Kan. App. 2d at 788.

### 1. The fraud claims

The Bank and Pickerell argue that Kahn's claims based on fraud are legally insufficient because they were not stated with the requisite particularity. The district court adopted and incorporated this argument while dismissing Kahn's fraud claims.

The elements of actual fraud are:

"(1) The defendant made false representations as a statement of existing and material fact; (2) the defendant knew the representations to be false or made them recklessly without knowledge concerning them; (3) the defendant made the representations intentionally for the purpose of inducing another party to act upon them; (4) the other

13

party reasonably relied and acted upon the representations; (5) the other party sustained damages by relying upon the representations." *Stechschulte*, 297 Kan. at 19.

The elements of fraud by silence are:

"(1) The defendant had knowledge of material facts that the plaintiff did not have and could not have discovered by the exercise of reasonable diligence; (2) the defendant was under an obligation to communicate the material facts to the plaintiff; (3) the defendant intentionally failed to communicate to the plaintiff the material facts; (4) the plaintiff justifiably relied upon the defendant to communicate the material facts to the plaintiff; and (5) the plaintiff sustained damages as a result of the defendant's failure to communicate the material facts to the plaintiff." *Stechschulte*, 297 Kan. at 21.

The factual allegations contained in Kahn's second amended petition supply a factual basis for each element constituting fraud and fraud by silence. Kahn's claims for fraud were stated with sufficient particularity to withstand the defendants' motion to dismiss. The district court erred by dismissing Kahn's claims for fraud against the Bank and Pickerell.

## 2. *The KCPA claims*

The Bank and Pickerell argue that Kahn's claim that they committed deceptive and unconscionable acts and practices under the KCPA should be dismissed because neither the Bank nor Pickerell were a "supplier" under K.S.A. 2015 Supp. 50-624(l) of the KCPA. They contend they were not "suppliers" because they repossessed 910 Catherine from Krogman. The district court adopted and incorporated this argument while dismissing Kahn's KCPA claim.

14

K.S.A. 2015 Supp. 50-624(l) states:

> "'Supplier' means a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer. *Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution*." (Emphasis added.)

The Bank and Pickerell's argument that they were not subject to KCPA liability because they were not "suppliers" is without merit. Their contention that 910 Catherine was repossessed property is factually at odds with the allegations of Kahn's second amended petition. According to the facts available for the district court's consideration, the bank defendants did not repossess 910 Catherine. Rather, the Bank repurchased the property from Krogman as part of a settlement of Krogman's lawsuit against the Bank. Thus, the Bank and Pickerell qualified as "suppliers" under K.S.A. 2015 Supp. 50-624(l).

As to the sufficiency of the facts Kahn made in support of her KCPA claims, we are satisfied that she complied with the pleading requirement of "[a] short and plain statement of [her] claim." K.S.A. 2015 Supp. 60-208(a)(1). Kahn asserted that the Bank and Pickerell committed deceptive acts and practices under K.S.A. 2015 Supp. 50-626(b)(2) of the KCPA by "engag[ing] in the willful use of exaggeration, falsehood, innuendo or ambiguity as to the material facts surrounding [the] transaction" and under K.S.A. 2014 Supp. 50-626(b)(3) of the KCPA by "engag[ing] in the willful failure to state a material fact or the willful concealment, suppression, or omission of material facts surrounding the transaction." Kahn further asserted that the Bank and Pickerell committed unconscionable acts and practices under K.S.A. 50-627 of the KCPA by engaging in a transaction that was designed to only benefit the Bank and Pickerell, was exceptionally one-sided in favor of the Bank and Pickerell, and was misleading. Kahn supported these claims with facts showing the Bank and Pickerell were aware that 910

15

Catherine had numerous material defects and misrepresented that they were unfamiliar with the conditions of the property because they had neither occupied nor managed the house.

While Kahn could have better organized and explained her arguments, a plaintiff's petition does not have to state facts sufficient to constitute a cause of action. *Rinsley*, 221 Kan. at 301. "The purpose of the petition is to give notice of the substance of the plaintiffs' claims. Discovery will more easily and effectively fill the gaps." *Montoy v. State*, 275 Kan. 145, 148, 62 P.3d 228 (2003). Accordingly, Kahn's petition included sufficient facts regarding her allegation that the Bank and Pickerell violated the KCPA to survive their motion to dismiss under K.S.A. 2015 Supp. 60-212(b)(6).

### 3. The UCCC claims

In their motion to dismiss, the Bank and Pickerell argued that Kahn's claims that they violated the UCCC should be dismissed because: (1) Kahn's purchase of 910 Catherine was for business purposes, not personal, family, or household purposes as required under K.S.A. 16a-1-301(17)(a)(ii); (2) Kahn's loan was not a "consumer loan" under K.S.A. 16a-1-301(17)(a) because the loan was secured by a first mortgage, and K.S.A. 16a-1-301(17)(b)(i) states that a loan secured by a first mortgage does not constitute a consumer loan unless it meets one of the listed exceptions; and (3) Kahn could not sue Pickerell under the UCCC because Pickerell did not personally make the loan to Kahn. The district court adopted and incorporated these arguments in dismissing Kahn's claims for violation of the UCCC.

We will first address whether Kahn's UCCC claims against Pickerell were properly dismissed. The Bank and Pickerell argue that Pickerell cannot be personally liable under the UCCC because he was not the lender but merely acted as the agent for the lender.

16

Under K.S.A. 16a-1-301(17)(a), "a 'consumer loan' is a loan made by a *person* regularly engaged in the business of making loans." (Emphasis added.) Under K.S.A. 16a-1-301(33), a "'[p]erson' includes a natural person or an individual, and an organization." The plain language of these provisions suggest that Pickerell could be a person regularly engaged in the business of making loans as he negotiated the loan on behalf of the Bank. However, K.S.A. 16a-1-103 states that unless displaced by other provisions of the UCCC, "the principles of law and equity, including the law relative to . . . principal and agent . . . supplement its provisions."

In Kahn's second amended petition, she never alleged that Pickerell personally made the loan. Instead, Kahn stated that Pickerell acted as an agent for the Bank. Additionally, Kahn's mortgage clearly stated that the lender of the mortgage loan was the Bank, not Pickerell. "The law of Kansas is unequivocal that '[w]here the other party [to a contract] has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge from some other source. [Citation omitted.]'" *Jeanes v. Bank of America,* 40 Kan. App. 2d 281, 306, 191 P.3d 325 (2008), *aff'd* 296 Kan. 870 (2013).

As previously stated, the district court should deny a motion to dismiss under K.S.A. 2015 Supp. 60-212(b)(6) if the district court can find a claim in plaintiff's petition under any possible theory. See *Cohen v. Battaglia*, 296 Kan. 542, 546, 293 P.3d 752 (2013). Here, Kahn's petition and attached exhibits clearly alleged that the Bank was the lender and Pickerell was an agent of the Bank. Additionally, Kahn never alleged that Pickerell was acting outside his authority as the Bank's agent. Thus, Pickerell could not be personally liable under any theory given Kansas' rule concerning principal and agent liability. Accordingly, we conclude that the district court properly dismissed Kahn's UCCC claims against Pickerell.

When the district court adopted and incorporated the Bank's remaining arguments in support of dismissal of Kahn's UCCC claims, it necessarily engaged in factfinding inconsistent with proper consideration of a motion to dismiss.

Proper consideration of the allegations in Kahn's second amended petition does not support a finding that Kahn's loan for purchase of 910 Catherine was for a "business purpose" as opposed to being "primarily for a personal, family or household purpose." K.S.A. 16a-1-301(17)(a)(ii).

The only allegations in the second amended petition that touch upon the purpose of the loan is that Kahn had "leased the house to tenants" for "two months" and that Kahn "attempted to list the Property for sale." This is insufficient to establish that the purpose of the loan was for a business purpose and certainly insufficient to negate the possibility that it was "primarily for a personal, family or household purpose." K.S.A. 16a-1-301(17)(a)(ii). Kahn's second amended petition also included the allegations that "[t]his was a consumer credit transaction as defined by K.S.A. 16a-1-301(15)." Whether Kahn took out the loan for a business purpose or a family purpose involves a question of fact, and the district court may not resolve factual disputes on a motion to dismiss for failure to state a claim. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008). Thus, to the extent the district court dismissed Kahn's UCCC claim because Kahn's loan was not a "consumer loan," the district court erred.

Likewise, it was improper for the district court to conclude that Kahn's loan was not a consumer loan because it was secured by a first mortgage with a "loan to value" ratio that did not exceed 100 percent. Kahn's second amended petition made a specific factual contention that negated that finding. It alleged: "[t]he loan was not excluded under K.S.A. 16a-1-301(17)[ ] because the real estate loan, even though a first mortgage on the Catherine Street Property, had 'loan to value' ratio which exceeded 100 [percent]." Any consideration of facts challenging the validity of that allegation was improper in deciding

18

the motion to dismiss. To survive dismissal under K.S.A. 2015 Supp. 60-212(b)(6), all that is required "is a short and plain statement of a claim that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Rinsley*, 221 Kan. at 302. Given that Kahn asserted that the loan-to-value ratio exceeded 100 percent, the district court should have accepted Kahn's assertion and denied the Bank's motion to dismiss. In failing to do so, the district court erred.

CONCLUSION

For the foregoing reasons: (1) we affirm the district court's dismissal of all claims against Mumaw and Griffith & Blair, Inc., (2) we affirm the dismissal of the UCCC claims against Pickerell, (3) we reverse the dismissal of the claims for fraud and violation of the KCPA against the Bank and Pickerell, and (4) we reverse the dismissal of the claim for violation of the UCCC against the Bank. The case is remanded to the district court for further proceedings.

Affirmed in part, reversed in part, and remanded.