No. 96,531

STATE OF KANSAS, *Appellee*, v. RAYMOND GILL, *Appellant*.

(196 P.3d 369)

Opinion filed December 5, 2008.

*Rachel Pickering*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Jared S. Maag*, deputy attorney general, was on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Raymond Gill challenges the district court's summary denial of his motion to file a direct appeal out of time, claiming that he received inadequate notification of his right to appeal his criminal sentence. Finding that Gill failed to establish the applicability of an exception to the time limits within which to file an appeal, we affirm.

Gill was originally charged in 1997 with first-degree murder and aggravated criminal sodomy. Following plea negotiations, he entered guilty pleas on March 30, 1998, to an amended charge of murder in the second degree-intentional, in violation of K.S.A. 1996 Supp. 21-3402(a), an off-grid person felony, and to the pending charge of aggravated criminal sodomy, a violation of K.S.A. 21-3506(a)(3)(A) & (B) (Furse 1995), a severity level 2 person felony. In conjunction with the pleas, Gill signed a document titled Entry of Plea, Acknowledgment of Rights and Stipulation, which included the following language:

"6. I understand from discussions with my attorney that by entering a plea pursuant to the plea agreement that I am surrendering and waiving the following legal rights which I would otherwise be able to exercise if I choose to go to trial.

. . . .

j. If I were to be convicted of any offenses in this Court, and should my motion for a new trial be denied, I would have the right to appeal my convictions and sentences to the Kansas Court of Appeals or the Supreme Court of Kansas where I would be entitled to have such court review the transcripts and record of my trial for any prejudicial error."

During the plea hearing, the district court made direct inquiries of the defendant, including the following exchange:

"THE COURT: If you went to trial and were convicted you would then have the right to appeal your conviction to a higher court.

"RAYMOND E. GILL: Yes.

"THE COURT: Once again, you have given up that right to appeal your conviction; do you understand that?

"RAYMOND E. GILL: Yes, sir.

"THE COURT: Now it may be possible that if you or your attorney thought that any sentence imposed at a later date was an illegal or improper sentence in any way you may have the right to appeal your sentence to a higher court. But you do not have the right to appeal the underlying conviction.

"RAYMOND E. GILL: Yes, sir.

"THE COURT: You understand the difference?

"RAYMOND E. GILL: Yes, sir."

On April 15, 1998, the court imposed concurrent sentences of life imprisonment for the second-degree murder conviction and 200 months' imprisonment for the aggravated criminal sodomy conviction. In calculating the term of imprisonment under the sentencing guidelines, the district court designated aggravated criminal sodomy as the primary crime for determining the base sentence, *i.e.*, the sentence to which Gill's total criminal history score was assigned. Gill objected, arguing that the second-degree intentional murder conviction was the primary crime and so should be assigned the base sentence, so that the sentence for the sodomy conviction would then be calculated utilizing a criminal history score of I. The court rejected Gill's argument as being contrary to explicit statutory language: "An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences." K.S.A. 1996 Supp. 21-4720(b)(2).

Just shy of 2 years later, on February 7, 2000, Gill commenced efforts to obtain transcripts and case records of his district court proceedings. His initial motion indicated that he was requesting the materials in order to pursue relief from his conviction and/or a K.S.A. 60-1507 motion. On February 9, 2000, the district court filed a journal entry denying the pro se motion. The court indicated that the 60-1507 motion had to be filed prior to the court's consideration of a transcript request.

Approximately 3½ years later, on September 24, 2003, Gill filed a pro se motion asking the court to furnish him with transcripts without cost. Again, the district court found that the request was premature and denied the motion because a proper motion pursuant to K.S.A. 60-1507 had not been filed. Shortly thereafter, in December 2003, Gill wrote a letter to the Clerk of the District Court of Crawford County requesting information on how to obtain his transcripts so that he could "perfect my appeal action." The letter indicated that Gill's trial attorney and his or her firm were under investigation for possible embezzlement or fraud. The district court responded with a letter stating that the order denying the earlier request was still binding.

On August 20, 2004, Gill again wrote to the county clerk, stating that he was seeking postconviction remedy without the benefit of an attorney. He requested copies of any documentation on file for his case, as well as requesting information on how to obtain a transcript of his statement to investigating officers. A notation by the county clerk shows that "info & motions" were mailed to Gill. Gill followed up with another letter, filed October 7, 2004, asking for a copy of his journal entry and for information on how to obtain transcripts. The district court responded by letter, providing a copy of the journal entry and directing Gill to contact his attorney or the court reporter for transcripts.

Apparently, Gill filed another pro se motion requesting transcripts on January 31, 2005; however, it is not in the record on appeal. The record does contain a February 4, 2005, journal entry denying a motion for transcripts because a K.S.A. 60-1507 motion had not been filed.

Another year later, on February 21, 2006, Gill filed a pro se motion to allow him to file an appeal out of time pursuant to the holdings in State v. Ortiz, 230 Kan. 733, 640 P.2d 1255 (1982). The motion argued that Gill had not been advised pursuant to 22-3608(c) that he had a right to appeal his sentence within 10 days of its imposition and, therefore, in the interest of fundamental fairness, he should be permitted to appeal out of time. The motion also alleged that Gill had been sentenced pursuant to a different grid box than the one his counsel had informed him would apply.

In a February 23, 2006, journal entry, the district court summarily denied the motion. The court noted that Gill's motion had failed to state the basis of any intended appeal, even though Gill did allege that he was sentenced from a grid box different from that which his trial attorney had said would apply. The court referred to the written plea agreement, which provided that a presentence investigation would determine the defendant's criminal history in order for the court to impose a proper sentence under the Kansas Sentencing Guidelines Act. Thus, finding that the defendant had never objected to his criminal history score, the district court opined that Gill had "received exactly the sentence he plea bargained for when the guilty pleas were entered." Moreover, the court observed that Gill had not manifested a desire to appeal until nearly 8 years after sentencing.

On appeal, Gill contends that the district court erred in summarily denying his motion for an out-of-time appeal. However, Gill does not complain about the summary nature of the motion denial and does not ask us to remand for an evidentiary hearing. Rather, his prayer is that we reverse the district court based upon the record before us and order that he be allowed to proceed with his appeal. Gill specifically argues that he received inadequate notice of his right to appeal because: (1) the written plea agreement incorrectly stated that a guilty plea would waive Gill's right to appeal his sentence; (2) the district court's advice that "it may be possible" to appeal "an illegal or improper sentence" failed to notify Gill that he had "an *affirmative right* to appeal of his sentence"; and (3) the court failed to advise Gill of the 10-day limitation on filing an appeal.

## STANDARD OF REVIEW

The parties agree that we review the factual findings underlying a trial court's *Ortiz* ruling for substantial competent evidence, but that we apply a de novo standard when reviewing the ultimate legal determination of whether those facts fit within an *Ortiz* exception. See *State v. Phinney*, 280 Kan. 394, 404, 122 P.3d 356 (2005).

## THE RIGHT TO APPEAL

The appellate courts of this state have been unable or unwilling to find a right to appeal among the provisions of the United States

Constitution or the Kansas Constitution; rather, our courts have declared that the right to appeal emanates solely from our statutes. See, *e.g.*, *State v. Legero*, 278 Kan. 109, 111, 91 P.3d 1216 (2004). Accordingly, we have opined that Kansas appellate courts obtain jurisdiction to entertain an appeal only where the appeal is taken in the manner prescribed by our statutes. 278 Kan. at 111. Moreover, an appellate court has a duty to question jurisdiction on its own initiative and to dismiss an appeal if the record indicates an absence of jurisdiction. *Phinney*, 280 Kan. at 398 (citing *State v. Verge*, 272 Kan. 501, 521, 34 P.3d 449 [2001]).

One of the applicable procedural rules is found in K.S.A. 22-3608(c), which provides: "For crimes committed on or after July 1, 1993, the defendant shall have 10 days after the judgment of the district court to appeal." We have specifically said that the filing of a timely notice of appeal is jurisdictional and if the defendant has not complied with the filing deadline, the appellate court must dismiss the appeal. *State v. Moses*, 227 Kan. 400, 404, 607 P.2d 477 (1980).

The district court sentenced Gill on April 15, 1998; Gill filed his motion to appeal out of time on February 21, 2006. Quite clearly, Gill's appeal was not taken in the manner prescribed by statute, and under our general pronouncements he would not have invoked appellate jurisdiction.

## THE ORTIZ EXCEPTIONS

However, *Ortiz* judicially created an exception to the general rule that strict compliance with the temporal requirement of K.S.A. 22-3608(c) is a prerequisite to appellate jurisdiction. In *Phinney*, we described the exception as follows:

"A limited exception to the general rule requiring a timely appeal from sentencing is recognized in the interest of fundamental fairness only in those cases where an indigent defendant was either: (1) not informed of the rights to appeal; (2) was not furnished an attorney to perfect an appeal; or (3) was furnished an attorney for that purpose who failed to perfect and complete an appeal. *Ortiz*, 230 Kan. at 735-36 (relying on *Brizendine v. State*, 210 Kan. 241, 242-44, 499 P.2d 525 [1972]). If these narrow exceptional circumstances are met, a court must allow an appeal out of time. See *Willingham*, 266 Kan. at 99-102." *Phinney*, 280 Kan. at 401-02.

During the pendency of this appeal, our court has endeavored to clarify the parameters of the *Ortiz* exceptions and to define the process for analyzing whether *Ortiz* mandates an out-of-time appeal in a given case. The result of those efforts is set forth in *State v. Patton*, 287 Kan. 200, 195 P.3d 753 (2008), which establishes the inquiries to be made for each of the separate exceptions.

Gill summarizes his complaint as follows: "The sentencing court failed to properly notify Mr. Gill of his right to appeal by inadequately advising of his absolute right to appeal his sentence, and the time frame in which he must file an appeal." Accordingly, Gill has implicated the first *Ortiz* exception. *Patton* instructed that due process is denied and the first *Ortiz* exception is placed in issue unless the district court informs the criminal defendant at sentencing that "(1) a right to appeal the severity level of the sentence exists; (2) any such appeal must be taken within 10 days; and (3) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal." 287 Kan. 200, Syl. ¶ 6.

*Patton* explained that an analysis of the first exception should proceed through the following progression. Initially, the defendant bears the evidentiary burden of showing, through the transcript of the sentencing hearing, that the district judge failed to communicate one or more of the items of required information. Obviously, if the record reveals that the sentencing judge adequately informed the defendant of his or her appeal rights, the first exception analysis ends with a denial of the requested out-of-time appeal.

If the defendant meets the initial burden of showing a deficiency in the sentencing judge's communication, the burden shifts to the State to prove that the defendant possessed actual knowledge of all of the required information from a source independent of the district court, such as through the advice of defense counsel or the wording of a written plea agreement. If the State meets that burden, the inquiry ends and the defendant loses his or her challenge based on the first *Ortiz* exception.

If the State cannot make a showing of actual knowledge, the defendant must then bear the evidentiary burden of proving that "had he or she been properly informed, a timely appeal would have been sought." *Patton*, 287 Kan. 200, Syl. ¶ 8. *Patton* noted that

this final requirement to invoke the first *Ortiz* exception "is consistent with this court's original admonition that a defendant may not 'let the matter rest.'" 287 Kan. at 222.

Here, Gill contends, the State concedes, and the record corroborates that the sentencing judge failed to advise Gill of the 10-day limitation for taking an appeal and that there is no evidence to indicate that Gill actually knew of that temporal constraint. Therefore, we can progress rapidly to the third step of determining whether Gill was prejudiced by that lack of information, *i.e.,* whether he would have sought a timely appeal if properly informed.

Although the district court did not have the benefit of *Patton*, it made the specific findings that "nothing in the file indicates that the defendant ever manifested a desire to pursue an appeal" and that "[a] delay of eight years in voicing his concern over a lack of an appeal clearly does not support the defendant's claims in his pro se motion." Moreover, on appeal, the State argues that Gill "failed to provide any evidence that he in fact wished to appeal his sentence," relying in part on the 8-year delay between sentencing and Gill's motion for an out-of-time appeal.

Gill does not directly contend that, but for the lack of information, he would have appealed his sentence within 10 days of judgment. Rather, he challenges the district court's findings in this regard on two grounds.

First, he suggests that a stated desire to appeal is not germane to the application of *Ortiz*, specifically arguing that according to *State v. Willingham*, 266 Kan. 98, 101, 967 P.2d 1079 (1998), "a defendant's failure to state a desire to appeal from such a sentence is not sufficient evidence of his desire to waive such a right." As *Patton* clarifies, the State need not prove an affirmative waiver of the right to appeal, but rather under the third step of the first *Ortiz* exception analysis the defendant must prove that he or she wanted to appeal the sentence.

Second, Gill contends that the district court's finding of an 8-year delay in requesting an appeal is erroneous because he commenced correspondence with the court in January 2000, less than 2 years after his April 15, 1998, sentencing. Ironically, Gill's ap-

pellate brief acknowledges that his correspondence advised the district court that he "was preparing a motion 'for relief of his conviction' and requested his transcripts for preparing the motion."

As the State points out, Gill's correspondence clearly indicated to the court that Gill intended to seek relief from his *conviction* through a K.S.A. 60-1507 proceeding. In no way did Gill manifest a desire to obtain relief from his *sentence* through an out-of-time direct appeal until he filed his motion in 2006. Gill's numerous letters and motions to the district court over a 6-year period provided a logical vehicle for him to express the notion that he wanted to file a direct appeal of his sentence. In other words, the record supports the district court's findings.

Without suggesting any bright-line temporal rules, we find that this case presents an example of a defendant who "let the matter rest" in contravention of the requirement that he or she prove that a timely appeal would have been sought if the appropriate information had been communicated at sentencing. The denial of Gill's motion to file an appeal out of time is affirmed.

Affirmed.

DAVIS, J., not participating.

GREENE, J., assigned.